CASE NO. 24-11256

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

PROGRESSIVE EXPRESS INSURANCE COMPANY

*Plaintiff, Counter Defendant -Appellee*,

vs.

KARINA MONASTERIO, *Defendant, Counter-Plaintiff, Cross-Plaintiff Appellant*,

And UBER TECHNOLOGIES INC.,
and RASIER-DC, LLC *Defendants- Appellees*

Appeal from the United States District Court for the Southern District of Florida

No. 23-61354-CV-MIDDLEBROOKS

_____

**APPELLANT'S REPLY BRIEF**
_____

H. Clay Roberts, Esq.
Javier A. Basnuevo, Esq.
Roberts, Basnuevo & Macias, P.A.
113 Almeria Avenue
Coral Gables, FL 33134
Tel: 305-442-1700
*Attorneys for Appellant Karina Monasterio*

# Case No. 24-11256
# Progressive Express Ins. Co. v. Monasterio

## CERTIFICATE OF INTERESTED PERSONS

In compliance with Eleventh Circuit Rule 26.1-1, Appellant, KARINA MONASTERIO, submits the following list of interested persons and entities:

Adams, Esq. Verasa Jones

Augustin-Birch, Hon. Magistrate Judge Panayotta D.

Basnuevo, Esq. Javier A.

Boyd & Jenerette, P.A.

Dahl, Esq. Patrick D.

Evanson, Esq. Blaine H.

Fornaris, Esq. Martha D.

Fornaris Law Firm, P.A.

Franz, Esq. Kevin D.

Gibson, Dunn & Crutcher, LLP

Gooden, Esq. Kansas R.

Middlebrooks, Hon. Judge Donald M.

Monasterio, Karina

Morgan & Akins, PLLC

Progressive Express Insurance Company

Raiser-DC, LLC

Roberts, Esq. H. Clay

Roberts & Basnuevo, P.A.

Roig Lawyers

Middlebrooks, Hon. Judge Donald M.

Monasterio, Karina

Morgan & Akins, PLLC

UBER Technologies, Inc.

# TABLE OF CONTENTS

Certificate of Interested Persons .......................................................................... A

Introduction………………………...……………………………………………1

Argument…………………………………………………………………….…...2

    I. Progressive, Uber, and Raiser must provide the "insurance requirements that apply" to TNC drivers like Monasterio according to the plain text of the TNC Statute………………………...…………………………………..2

        a. Reading the TNC Statute harmoniously with Florida's UM Statute favors a conclusion that UM coverage is mandated in this case………………………………………………….………….......…..6

        b. Progressive is required to provide statutorily mandated coverage………………………………………………….……….9

    II. Regardless of whether this Court concludes that Progressive's policy provides UM coverage, the TNC Statute required that Uber/Rasier secure UM coverage in Monasterio's favor………………………...…………9

Conclusion…………………………………………………………….…….…..12

Certificate of Compliance…………………………………………………….…13

Certificate of Service……………………………………………………...……13

# TABLE OF AUTHORITIES

**Cases**

*Alexdex Corp. v. Nachon Enterprises, Inc.*, 641 So.2d 858, 861 (Fla. 1994) ..........9

*Am. Home Assurance Co. v. Plaza Materials Corp.*, 908 So.2d 360 (Fla. 2005) .....8

*Checker Cab Operators, Inc. v. Miami-Dade County*, 899 F.3d 908, 913-14 (11th Cir. 2018) ........................................................................................................3

*Edmond v. United States*, 520 U.S. 651, 657 (1997) ..................................................7

*Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 587 (11th Cir. 2015).....8

*In Re Shek*, 947 F.3d 770 (11th Cir. 2020) ................................................................7

*Kmart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988) ...........................................7

*Mercury Ins. Co. of Florida v. Anatkov*, 929 So.2d 624 (Fla. 3d DCA 2006) ..........9

*Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 948-49 (11th Cir. 2001)...............8

**Treatises**

Antonin Scalia & Bryan Garner, Reading Law: Interpretation of Legal Texts, 167 (2012) ....................................................................................................................7

# INTRODUCTION

The trial court erred by concluding the TNC Statute places no requirement on Progressive, Uber, or Rasier to obtain UM/UIM coverage for Uber/Rasier's TNC Drivers. The plain test of the law lists UM/UIM coverage as a "requirement." See Fla. Stat. 627.748 (7)(c) ("… the following insurance requirements apply…"). Monasterio proposes a harmonious reading of this law which includes UM/UIM as a required insurance for TNCs and TNC drivers, the modifying phrase "as required by s. 627.727" does not negate a TNCs mandate to procure UM coverage for its drivers. Instead, the phrase "as required by s. 627.727" is a general reference to Florida's UM Statute, which comprehensively regulates UM coverage. By adopting Monasterio's interpretation, this Court will give meaning each word or phrase in the law, while also furthering the intent of the law.

Appellees argue that the mandate "… the following insurance requirements apply…" has no meaning because traditional UM caselaw, in situations that do not involve the TNC Statute or TNC, allows insureds to opt-out of coverage. Appellees argue that as long as Progressive offers UM/UIM coverage to Uber/Rasier, Uber/Rasier who may then reject that coverage on behalf of all TNC Drivers, without the TNC Driver's knowledge or consent, and leave TNC Drivers unprotected. Appellee's argument runs contrary to the text of the law, the intent of

the law, and the policy underpinning the law. Appellant proposes a harmonious reading of the law that gives meaning to each word and phrase. This Court must reverse the trial court's decision and mandate that either: (1) PROGESSIVE provide the required UM/UIM coverage applicable to Monasterio; or (2) UBER/RASIER indemnify Monasterio for her injuries. This Court is also within its purview to require that all three Appellee's provide indemnification to Monasterio.

## ARGUMENT

I. **Progressive, Uber, and Raiser must provide the "insurance requirements that apply" to TNC drivers like Monasterio according to the plain text of the TNC Statute.**

Transportation Network Companies, like Uber, allow anyone to be their driver and transport passengers by connecting users through an online application. Their novel business model prompted new regulations for TNC's and their drivers. Florida enacted the Transportation Network Company Act to address this new business model.

The plain text of the law places a new burden on TNCs to maintain certain insurance coverages for the TNC driver's benefit while the TNC driver is logged onto the digital network or providing prearranged ride services. Fla. Stat. §627.748(7)(d). The TNC Statute makes clear that if the TNC driver's personal insurance has lapsed, or does not provide the required coverages, "the insurance

2

maintained by the TNC must provide the coverage required under this subsection." Fla. Stat. §627.748(7)(d). When a driver is engaged in a prearranged ride, "the following insurance requirements apply," which then lists "uninsured/underinsured vehicle coverage" as one of those insurance requirements. Fla. Stat. §627.748(7)(c)(1.)(a.). The TNC Statute, enacted in July 2017, is meant to regulate the TNC industry "comprehensively" at the state level. See *Checker Cab Operators, Inc. v. Miami-Dade County*, 899 F.3d 908, 913-14 (11th Cir. 2018).[1] The TNC Statute imposes obligations on TNCs, TNC drivers, and TNC insurers that are not imposed on other for-hire transportations services, other drivers, or traditional automobile insurers.

The language in the law stating "the following insurance requirements apply" coupled with the mandate in subsection (d) "that the insurance maintained by the TNC must provide the coverage required by this subsection" create an obligation on TNCs and their insurers to provide UM coverage for TNC drivers engaged on a prearranged ride. Appellees think otherwise. This appeal presents issues of first impression. This appeal asks this Court to interpret sections (7) and (8) of Florida's TNC Statutes and issue and opinion that this law be interpreted as

---

[1] This Court has previously recognized that between 2012 and 2016, TNCs in Miami-Dade County operated "unlawfully" because local ordinances prohibited for-hire transportation services without taxi medallions. See *Checker Cab*, 899 F.3d at 913.

written and as intended by its authors. The relevant text of those subsections provide:

> (7)(a) Beginning on July 1, 2017, a TNC driver or a TNC on behalf of the TNC driver shall maintain primary automobile insurance that:
> 1. Recognizes that the TNC driver is a TNC driver or otherwise uses a vehicle to transport riders for compensation; and
> 2. Covers the TNC driver while the TNC driver is logged on to the digital network of the TNC or while the TNC driver is engaged in a prearranged ride.
>
> . . .
>
> (7)(c)The following automobile insurance requirements apply while a TNC driver is engaged in a prearranged ride:
>
> 1. Automobile insurance that provides:
>    a. A primary automobile liability coverage of at least $1 million for death, bodily injury, and property damage;
>    b. Personal injury protection benefits that meet the minimum coverage amounts required of a limousine under ss. 627.730-627.7405; and
>    c. Uninsured and underinsured vehicle coverage as required by s. 627.727.
>
> 2. The coverage requirements of this paragraph may be satisfied by any of the following:
>    a. Automobile insurance maintained by the TNC driver or the TNC vehicle owner;
>    b. Automobile insurance maintained by the TNC; or
>    c. A combination of sub-subparagraphs a. and b.
>
> (7)(d)If the TNC driver's insurance under paragraph (b) or (c) has lapsed or does not provide the required coverage, the insurance maintained by the TNC must provide the coverage required under this subsection, beginning with the first dollar of a claim, and have a duty to defend such claim.

> (8)(a)(1.) Before a TNC driver is allowed to accept a request for a prearranged ride on the digital network, the TNC must disclose in writing to the TNC driver: 1. The insurance coverage, including the types of coverage and the limits for each coverage, which the TNC provides while the TNC driver uses a TNC vehicle in connection with the TNC's digital network.

To read this text and give each word therein meaning, is to conclude that TNCs are required to provide UM insurance to their drivers. If they were not required to do so, then this category of insurance would simply be omitted from the TNC Statute. However, the nucleus of Appellees' argument is that neither Progressive, Uber, nor Rasier are mandated to provide UM coverage because the TNC Statute does not say so. Their briefs ignore, and fail to address, the words written at the very beginning of Fla. Stat. §627.748(7)(c) "the following insurance requirements apply while a TNC driver is engaged in a prearranged ride." It is in these words that the obligation to procure UM coverage for TNC drivers is established, and these words are not abrogated by the text of Florida's UM Statute, section 627.727.

In the list immediately follows those words, the law specifies that "uninsured/underinsured vehicle coverage" is one of those requirements. Appellees contend that the words "as required by s. 627.727" in section 627.748(7)(c)(1.)(a.) must be interpreted to mean that they are excused from the "insurance requirements that apply" with respect to UM coverage. Such an

5

interpretation would render the words in the TNC Statute meaningless, creating an extraordinary exception to the TNC Statute that is not found in its text.

Appellee's argument focuses on outdated caselaw, which examine personal automobile insurance policies and commercial fleet insurance policies without commenting on the novel TNC business model. Of course, those cases which pre-date the TNC Statute allow persons and companies who are not TNCs to reject UM coverage. This case, however, requires this Court to address UM coverage in a new, and limited, context. Appellant is not asking this Court to overturn or upend traditional UM coverage law. Rather, Appellant asks this Court to acknowledge that Florida's TNC Statute places new requirements on TNCs imposed by the legislature to ensure that motorists who increase the risk along our roads are sufficiently indemnified by the entity ultimately profiting from those risks.

### a. Reading the TNC Statute harmoniously with Florida's UM Statute favors a conclusion that UM coverage is mandated in this case.

Appellees are mistaken to argue that Monasterio's interpretation of the TNC Statute violates the cannons of statutory construction. Monasterio does not ask this Court to ignore the words "as required by s. 627.727" found in the TNC Statute. Instead, Monasterio reads these words harmoniously with the TNC Statute and Florida UM Statute to provide every word in the law meaning. Statutes must be read to give each word and provision meaning, while keeping in mind that

"statutory provisions are not written in isolation," and therefore "the entirety of the document thus provides the context for each of its parts." *In Re Shek*, 947 F.3d 770 (11th Cir. 2020) (quoting *Kmart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988) and Antonin Scalia & Bryan Garner, <u>Reading Law: Interpretation of Legal Texts</u>, 167 (2012), respectively). "We must interpret statutes 'harmoniously,' reconciling separate sections so that they are compatible and not contradictory." *Id.* (quoting <u>Reading Law</u> at 180). "Ordinarily, when a specific provision conflicts with a general one, the specific governs." *Edmond v. United States*, 520 U.S. 651, 657 (1997).

Monasterio reads the TNC Statute to require UM coverage for TNC drivers who are engaged in a prearranged ride because UM coverage is listed after the words "the following insurance requirements apply." Fla. Stat. §627.748 (7)(c)(1.). The phrase "as required by s. 627.727" is a reference to a general statute governing UM insurance, and should therefore by read to reference all of the various provisions governing UM insurance, and the requirements generally found in §627.727. Those requirements, as noted in Monasterios's Initial Brief, are wide-ranging. Generally, §627.727 requires an insurer to indemnify their insured when the liability insurer is unable to make payments because of insolvency, or because the damages suffered are greater than the limits of insurance, or because the injured party is excluded from coverage for certain reasons. See Fla. Stat.

7

§627.727(3). Had the legislature failed to include the words "as required by s. 627.727" in the TNC Statute, then it would be unclear if, for example, an injured TNC driver is required to provide written notice to the TNC's UM carrier when agreeing to settle a claim. See Fla. Stat. §627.727(6)(a).

Monasterio's reading does not render the words "as required by s. 627.727" surplusage. However, Appellees' reading does render the words "the following insurance requirements apply" to be surplusage. If, as Appellees urge, UM coverage is only an "insurance requirement" that applies to TNCs if it is also required by the UM Statute, then why list it as an "insurance requirement." Their argument requires this Court to disregard those initial words in subsection (7)(c) of the TNC Statute and pretend that do not exist. Only then, does their proposed interpretation give meaning to each word and phrase of the statute.

As this Court has previously reasoned, sometimes statutes contain phrases which may reasonably be interpreted in different ways. ). "Where the plain text of the statute is in inescapable conflict, the Florida Supreme Court has repeatedly looked to legislative staff analyses, which it has described as 'one touchstone of the collective legislative will." *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 587 (11th Cir. 2015) (quoting *Am. Home Assurance Co. v. Plaza Materials Corp.*, 908 So.2d 360 (Fla. 2005)). When courts "[encounter] inconsistency in the statutes when they are read in tandem, we look to their

legislative history." *Alexdex Corp. v. Nachon Enterprises, Inc.*, 641 So.2d 858, 861 (Fla. 1994) (further reasoning "We now have two statutes that when considered separately are clear, precise, and their meanings understandable; yet when taken together they are inconsistent."). Here, as even the district court noted, the legislative history supports Monasterio's argument.

### b. Progressive is required to provide statutorily mandated coverage.

In their response, Progressive attempts to distinguish *Mercury Ins. Co. of Florida v. Anatkov*, 929 So.2d 624 (Fla. 3d DCA 2006) from the facts of this case. The holding in *Anatkov* is not dependent on a close reading of the facts. Instead, the case acknowledges that Florida law requires an insurer to provide legally mandated coverage even if it has not charged the insured for such coverage. Id. at 626-27. In this case, Progressive is still free to seek premium reimbursements from Uber/Rasier should the Court require that they provide the UM coverage mandated by the TNC Statute.

### II. Regardless of whether this Court concludes that Progressive's policy provides UM coverage, the TNC Statute required that Uber/Rasier secure UM coverage in Monasterio's favor.

IN addition to Progressive's legal mandate to provide UM coverage for Monasterio, Uber/Rasier also had an obligation imposed by the TNC Statute to provide that coverage for Monasterio. Appellees do not address this argument directly, instead they rest on their erroneous interpretation of the law to claim that

9

no entity was required to provide Monasterio with UM coverage while she was a TNC driver for Uber/Rasier.

The TNC Act places an obligation on TNCs, like Uber and Rasier, to obtain the necessary coverages mandated by the Act. As detailed above, the "insurance requirements" set forth in section 627.748(7)(c) "may be satisfied by any of the following. . . b. Automobile insurance maintained by the TNC." See Fla. Stat. 627.748(7)(c)(2.). When the TNC Driver's personal insurance either lapses or does not provide the required coverage, "the insurance maintained by the TNC must provide the coverage required under this subsection. . ." Fla. Stat. §627.748(7)(d). Regardless of whether the Progressive Policy actually provided UM/UIM coverage here, Uber/Rasier had an independent statutory obligation to secure UM/UIM coverage for Monasterio.

This independent duty further supports Monasterio's harmonious reading of the TNC Act and section 627.727. The district court wrongly reasoned that, because the Progressive Policy did not insure a specifically identified motor vehicle, and because section 627.727(1) only mandates UM/UIM coverage for specifically identified motor vehicles, therefore, Progressive was under no obligation to provide UM/UIM coverage to Monasterio. But the district court did not consider that Uber/Rasier had an independent obligation to secure that coverage. This independent obligation, found in the TNC Act, makes no mention

10

of insurance policies for specifically identified motor vehicles, and is therefore, not dependent on the language in section 627.727(1). The independent duty that "the insurance maintained by the TNC must provide the coverage required under this subsection" is not limited by what kind of policy Uber/Rasier purchase, whether they purchase individual policies for each driver, individual policies for TNC Vehicles, or blanket policies covering all actual or potential TNC Drivers. The TNC Act allows Uber/Rasier and Progressive the freedom to craft those insurance relationships in ways that best fit their business needs, as long as the end result meet the insurance requirements the Act mandates.

## CONCLUSION

For all the foregoing reasons, the final judgment must be reversed, and this Court should remand this case to the district court with instruction to deny Progressive's motion for summary judgment, which Uber and Rasier joined, and hold any additional proceedings deemed necessary to provide justice in this case.

Respectfully submitted,

H. Clay Roberts, Esq.
Javier A. Basnuevo, Esq.
Roberts, P.A.
113 Almeria Avenue
Coral Gables, FL 33134
Phone: 305-442-1700
roberts@robertspa.com
basnuevo@robertspa.com

By: /s/ Javier A. Basnuevo
     Javier A. Basnuevo, Esquire
      (Fla. Bar No.: 100509)

## CERTIFICATE OF COUNSEL

Undersigned counsel certifies that this document complies with Rule 32(g), the number of words in this Opening Brief are 3235.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 24, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to all counsel of record.

>ROBERTS, BASNUEVO & MACIAS, P.A.
>Attorneys for Appellant, Karina Monasterio
>113 Almeria Avenue
>Coral Gables, Fl 33134
>Telephone:  305-442-1700
>Fax:  305-442-2559
>E-mail:  basnuevo@robertspa.com
>
>By:    /s/ Javier A. Basnuevo
>          Javier A. Basnuevo, Esquire
>          (Fla. Bar No.: 100509)