IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

No. 24-11256

---

**PROGRESSIVE EXPRESS INSURANCE COMPANY,**

**Appellee,**

**v.**

**KARINA MONASTERIO,**

**Appellant**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
District Court Docket No.: 23-cv-61354-DMM

---

**APPELLEE PROGRESSIVE EXPRESS INSURANCE COMPANY'S
AMENDED ANSWER BRIEF**

---

**BOYD & JENERETTE, PA**
**KEVIN D. FRANZ**
Florida Bar No. 15243
kfranz@boydjen.com
1001 Yamato Road, Suite 102
Boca Raton, FL 33431
Tel: (954) 670-2198
*Lead Counsel*
*Counsel for Appellee Progressive Express Insurance Company*

# CERTIFICATE OF INTERESTED PERSONS

In compliance with Eleventh Circuit Rule 26.1-1, the Appellee PROGRESSIVE EXPRESS INSURANCE COMPANY, submits the following interested persons and entities:

Adams, Esq. Veresa Jones

Augustin-Birch, Hon. Magistrate Judge Panayotta D.

Basnuevo, Esq. Javier A.

Boyd & Jenerette, P.A.

Dahl, Esq. Patrick D.

Evanson, Esq. Blaine H.

Fornaris, Esq. Martha D.

Fornaris Law Firm, P.A.

Franz, Esq.  Kevin D.

Gibson, Dunn & Crutcher, LLP

Progressive Express Insurance Company

Rasier-DC, LLC

Roberts, Esq. H. Clay

Roberts & Basnuevo, P.A.

Roig Lawyers

Middlebrooks, Hon. Judge Donald M.

Monasterio, Karina

Morgan & Akins, PLLC

Uber Technologies, Inc.

## CORPORATE DISCLOSURE STATEMENT

Progressive Express Insurance Company is an Ohio domiciled property and casualty company, whose principal address is 6300 Wilson Mills Road, Mayfield Village, Ohio 44143, and who is wholly owned by Progressive Commercial Holdings, Inc. Progressive Commercial Holdings, Inc. is a Delaware corporation, whose principal address is c/o CT Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Progressive Commercial Holdings, Inc. is wholly owned by The Progressive Corporation.

Progressive Commercial Holdings, Inc. is a privately held company which owns all of the issued and outstanding capital stock of Progressive Express Insurance Company. No publicly traded company owns any capital stock of Progressive Express Insurance Company. The Progressive Corporation is a publicly traded Ohio holding company with its principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. The Progressive Corporation does not own any shares of Progressive Express Insurance Company.

## STATEMENT REGARDING ORAL ARGUMENT

Progressive Express Insurance Company does not request oral argument. The record is not extensive, and the issue on appeal is not complex. The facts and legal arguments are adequately presented in the briefs and record and the decisional process will not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................C1 of 2

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS......................................................................... ii

TABLE OF CITATIONS .......................................................................v

STATEMENT OF THE ISSUE...................................................................1

STATEMENT OF THE CASE...................................................................1

I.      NATURE OF THE CASE.........................................................1

II.     STATEMENT OF THE FACTS ................................................2

        A.      TNC commercial auto policy issued by Progressive to Rasier........2

        B.      Monasterio downloaded the Uber App and agreed to operate as a
                TNC driver .................................................................7

        C.      The May 6, 2022 auto accident .......................................9

        D.      Monasterio's settlement with the tortfeasor and lawsuit filed in State
                Court seeking UM benefits .............................................9

        E.      Federal declaratory judgment action.............................10

        F.      Monasterio's Crossclaim and Counterclaim ...................11

III.    COURSE OF PROCEEDINGS AND DISPOSITION ...........................11

        A.      Progressive's Motion for Summary Judgment, Monasterio's
                Response, and Progressive's Reply ................................11

        B.      Order granting summary judgment, Final Judgment, and appeal..12

STANDARD OR SCOPE OF REVIEW ................................................17

SUMMARY OF THE ARGUMENT ....................................................................17

ARGUMENT AND CITATIONS TO AUTHORITY ..........................................18

I.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF PROGRESSIVE BECAUSE THE TNC STATUTE DID NOT MANDATE THAT PROGRESSIVE PROVIDE UM COVERAGE UNDER THE PROGRESSIVE POLICY, AND THE PROGRESSIVE POLICY DID NOT PROVIDE UM COVERAGE .....18

    A.    Progressive was not required under the TNC Statute to provide UM coverage because the Progressive Policy did not include any specifically insured or identified motor vehicle under section 627.727(1), Florida Statutes.........................................................18

    B.    *Even if* subsection (1) applied—which it did not—Rasier rejected UM coverage; therefore, UM coverage was correctly not afforded under the Progressive Policy...........................................................22

    C.    Progressive was not required under the TNC Statute to provide UM coverage because Progressive made UM coverage "available as part of the application for such policy" in compliance with section 627.727(2), Florida Statutes..........................................................24

    D.    The remaining subsections of the UM Statute are inapplicable ....25

    E.    Monasterio's statutory interpretation contradicts the "plain meaning" of the TNC and UM Statutes and the tenets of statutory construction ....................................................................................26

    F.    Monasterio's thinly veiled attempt to have this Court re-write the TNC Statute should be rejected ....................................................33

    G.    This Court should affirm the Final Judgment because the plain and unambiguous terms of the Progressive Policy reflect that it did not provide UM coverage ..................................................................37

II.    PROGRESSIVE COMPLIED WITH ITS OBLIGATIONS UNDER FLORIDA LAW, AND MONASTERIO'S CLAIMS AGAINST UBER AND RASIER REMAIN PENDING ....................................................... 38

CONCLUSION ...................................................................................... 39

CERTIFICATE OF COMPLIANCE ........................................................ 40

CERTIFICATE OF SERVICE ................................................................ 40

<h1>TABLE OF CITATIONS</h1>

**Cases**                                                     **Page**

*Allen v. USAA Cas. Ins. Co.,
    790 F. 3d 1274 (11th Cir. 2015) ........................................ 20, 27-28

Allied Van Lines, Inc. v. Bratton,
    351 So. 2d 344 (Fla. 1977) ............................................37

Amerisure Mut. Ins. Co. v. Auchter Co.,
    673 F. 3d 1294 (11th Cir. 2012) ....................................39

Am. Home Assur. Co. v. Plaza Materials Corp.,
    908 So. 2d 360 (Fla. 2005) ............................................31

Anthony v. Georgia,
    69 F. 4th 796 (11th Cir. 2023) ......................................17

Badaracco v. Comm'r,
    464 U.S. 386 (1984) ......................................................33

Brown-Peterkin v. Williamson,
    307 So. 3d 45 (Fla. 4th DCA 2020) ..............................23

Calderon v. Sixt Rent A Car, LLC,
    No. 22-13539, ___ F. 4th ___, 2024 U.S. App. LEXIS 20701 (11th Cir. Aug
    15, 2024) ......................................................................37

Coates v. R.J. Reynolds Tobacco Co.,
    375 So. 3d 168 (Fla. 2023) ............................................27

Connecticut Nat'l Bank v. Germain,
    503 U.S. 249 (1992)......................................................28

Crowley v. Goauto Ins. Co.,
    286 So. 3d 466 (La. 4th Ct. App. 2019) ......................34

Dep't of Agric. Rural Dev. Rual Hous. Serv. v. Kirtz,
    601 U.S. 42 (2024)........................................................30

Dewsnup v. Timm,
    502 U.S. 410 (1992)................................................................ 27-28

Donato v. AT&T,
    767 So. 2d 1146 (Fla. 2000) ..........................................................20

Fla. Dep't of Revenue v. Fla. Mun. Power Agency,
    789 So. 2d 320 (Fla. 2001) .............................................................33

Fla. Dep't of State v. Martin,
    916 So. 2d 763 (Fla. 2005) .............................................................29

Gordon v. Novastar Mortg., Inc. (In re Hedrick),
    524 F. 3d 1175 (11th Cir. 2008) ............................................. 27-29

Greater Birmingham Ministries v. Sec'y of State,
    105 F. 4th 1324 (11th Cir. 2024)....................................................17

Hawkins v. Ford Motor Co.,
    748 So. 2d 993 (Fla. 1999) .............................................................33

Holmes Cnty. Sch. Bd. v. Duffell,
    651 So. 2d 1176 (Fla. 1995) ...........................................................29

*Hooper v. Zurich Ins. Co.,
    789 So. 2d 368 (Fla. 2d DCA 2001)......................................13, 22

Ill. Ins. Exch. v. Scottsdale Ins. Co.,
    679 So. 2d 355 (Fla. 3d DCA 1996)...............................................39

Jean v. James River Ins. Co.,
    274 So. 3d 46 (La. 4th Ct. App. 2019) writ denied 280 So. 3d 160 (La.
    2019).. .................................................................................. 30-31

Johnson v. Feder,
    485 So. 2d 409 (Fla. 1986) .............................................................28

Kellner v. NCL (Bah.), Ltd.,
    753 F. App'x 662 (11th Cir. 2018)......................................7, 26, 37

vi

Knowles v. Beverly Enterprises-Florida,
    898 So. 2d 1 (Fla. 2004) ...................................................................18

Mercury Ins. Co. v. Anatkov,
    929 So. 2d 624 (Fla. 3d DCA 2006)...................................... 35-36

Nieves v. N. River Ins. Co.,
    49 So. 3d 810 (Fla. 4th DCA 2010)................................................24

*O'Brien v. State Farm Fire & Cas. Co.,
    999 So. 2d 1081 (Fla. 1st DCA 2009) ................................... 21-22

Platt v. Union P.R. Co.,
    99 U.S. 48 (1879)...........................................................................28

Sapuppo v. Allstate Floridian Ins. Co.,
    739 F. 3d 678 (11th Cir. 2014) ............................................... 23-24

SE Prop. Holdings, LLC v. Welch,
    65 F. 4th 1335 (11th Cir. 2023) ....................................................18

Sherman v. Transamerica Life Ins. Co.,
    475 F. App'x 733 (11th Cir. 2012).................................................38

Soul Quest Church of Mother Earth, Inc. v. AG,
    92 F. 4th 953 (11th Cir. 2023) ......................................................18

State Farm Mut. Auto. Ins. Co. v. Menendez,
    70 So. 3d 566 (Fla. 2011) ..............................................................38

State Farm Mut. Auto. Ins. Co. v. Spangler,
    64 F. 4th 1173 (11th Cir. 2023) ....................................................38

Travelers Commer. Ins. Co. v. Harrington,
    154 So. 3d 1106 (Fla. 2014) ..........................................................23

Tres v. Royal Surplus Lines Ins. Co.,
    705 So. 2d 643 (Fla. 3d DCA 1998)...................................... 24-25

United Servs. Auto. Ass'n v. Roth,
    744 So. 2d 1227 (Fla. 4th DCA 1999)...........................................................21

Weesner v. United Servs. Auto. Ass'n,
    711 So. 2d 1192 (Fla. 5th DCA 1998)...........................................................25

**Rules**

11th Cir. R. 28-5 ........................................................................................1

**Statutes**

28 U.S.C. § 1291 .......................................................................................1

*§ 627.727, Fla. Stat. ...........................................1, 12-29, 31-32, 36, 39

*§ 627.748, Fla. Stat. .................................................1, 12, 17-20, 31-35

La. Rev. Stat. Ann. § 22:1295..................................................................30

La. Rev. Stat. Ann. § 45:201.6.................................................................30

**Other Authorities**

Antonin Scalia & Brian A. Garner,
    Reading Law: The Interpretation of Legal Texts (2012) ........................ 27-28

BLACK'S LAW DICTIONARY (10th ed. 2014)..............................................20

## STATEMENT OF THE ISSUE

Whether the District Court correctly entered summary judgment in favor of Progressive because, under section 627.748, Florida Statutes, the Progressive Transportation Network Company ("TNC") Commercial Auto Policy was not required by section 627.727, Florida Statutes, to provide uninsured/underinsured motorist ("UM") coverage, and it did not provide UM coverage.[1]

## STATEMENT OF THE CASE

### I.  NATURE OF THE CASE

This is an appeal of a Final Judgment entered after the District Court granted Progressive's motion for summary judgment in a declaratory judgment action. (Docs. 12, 52, 54 & 60).[2]

The underlying declaratory judgment action stems from an automobile accident, and the issue on appeal concerns the interplay between section 627.727, Florida Statutes, ("UM Statute") and section 627.748, Florida Statutes, ("TNC Statute").

---

[1] The second issue raised by Monasterio does not appear to even concern Progressive as reflected by Section II in the Initial Brief, which provides, "Uber and Rasier-DC, violated the law by refusing to provide legally mandated indemnification."  I.B., p. 31.  This issue is not necessary to adjudicate this appeal but is addressed below in any event.

[2] Documents filed in this appeal will be cited as "App. Doc.____."  References to the record below will be cited as "Doc.__" and will include page numbers if applicable. See 11th Cir. R. 28-5.

## II. STATEMENT OF THE FACTS

### A. TNC commercial auto policy issued by Progressive to Rasier.

Progressive issued a TNC Commercial Auto Policy number 06250110-8 ("Progressive Policy") to named insured Rasier-DC, LLC ("Rasier"), a Florida TNC, which was in effect from March 1, 2022 to March 1, 2023. (Docs. 12-1; 47, p. 3).[3] Rasier operated a TNC in Florida. (Doc. 47, p. 3).

The Progressive Policy included Uber Technologies, Inc. ("Uber") as an additional insured. (Docs. 12; 12-1, p. 23; 47, p. 3).[4] The Progressive Policy provided $1,000,000 combined single limit for bodily injury and property damage coverage. (Docs. 12-1, p. 5; 47, p. 3). The Progressive Policy also stated in part as follows:

### GENERAL DEFINITIONS

. . . .

4. "**Covered TNC operations**" means the provision of either passenger services or non-passenger delivery services by a natural person, and specifically excludes taxi operations. Only **your transportation network company** services that are available in the **ride-share application**, and previously disclosed to **us** by **you** in **your** application for insurance, or endorsement thereto, for use with **valid credentials** are considered "**covered TNC operations**."

---

[3] Doc. 47 is the Joint Pretrial Stipulation executed by all parties. Paragraph (5) is "a concise statement of uncontested facts which will require no proof at trial, with reservations." (Doc. 47, pp. 3-7).

[4] "Rasier-DC, LLC is a wholly-owned subsidiary of Rasier, LLC. Rasier, LLC is the sole member of Rasier-DC, LLC. Rasier, LLC is a wholly-owned subsidiary of Uber Technologies, Inc. Uber Technologies, Inc. is the sole member of Rasier, LLC." (Doc. 18, p. 1).

5. "**Declarations**" or "**declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected and the limit for each coverage.

. . . .

7. "**Insured auto**" means:

   a. Any **auto** while being used by a **TNC driver**, but only while engaged in providing a **prearranged service** utilizing the **ride-share application** accessed using that **TNC driver's valid credentials**;

. . . .

12. "**Prearranged service**" means any of the following:

   a. the operation of any **insured auto** while the driver is logged on to the **ride-share application** and has recorded acceptance in the **ride-share application** to a request to provide **covered TNC operations** and is engaged in one of the following activities. . . .

   (ii) traveling to the final destination location of the passenger(s) or **goods**, including the dropping off of any passenger(s) or **goods**, and the pick-up location was in the state of Florida.

. . . .

14. "**Ride-share application**" means the digital network licensed and made available by **you** that is used by a **TNC driver** to receive requests to provide **covered TNC operations.**

15. "**TNC driver**" means an individual, who is not **your** employee, providing **covered TNC operations** via the **ride-share application.**

16. "**Transportation network company**" means an entity that uses an online enabled application, software, website, or system to connect network company users with network company drivers for the purpose of facilitating the transportation of passengers and/or non-passenger delivery of **goods**.

. . . .

18. **"We," "us"** and **"our"** means the company providing this insurance as shown on the **declarations page**.

19. **"You," "your"** and **"yours"** refer to the named insured shown on the **declarations page**.

(Doc. 12-1, pp. 41-44).

## PART III—UNINSURED MOTORIST

**INSURING AGREEMENT—UNINSURED MOTORIST BODILY INJURY COVERAGE**

Subject to the Limits of Liability, if **you** pay the premium for this coverage, **we** will pay for damages, other than punitive or exemplary damages, that an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury**:

1. sustained by an **insured**;
2. caused by an **accident** occurring while the **TNC driver** is engaged in providing a **prearranged service**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto**.

. . . .

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

When used in this Part III, whether in the singular, plural, or possessive:

1. **"Insured"** means:
   a. **You**;
   b. Any **TNC driver** operating an **insured auto** who has entered into a contract with **you** to provide **covered TNC operations** via the **ride-share application** and whose contract was in force at the time of the subject **accident** or **loss**; . . . .

(Doc. 12-1, pp. 56-57).

**Florida Transportation Network Company Policy Endorsement**

**Your** policy is amended as follows:

4

. . . .

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive:

1. "**Insured**" means:

   a. any **TNC driver** operating an **insured auto** during the above specified period of time who has entered into a contract with you to provide **covered TNC operations** via the **ride-share application** and whose contract was in force at the time of the subject **accident** or **loss**; . . . .

(Doc. 12-1, p. 8, 11).

On January 1, 2022, prior to issuance of the Progressive Policy, Progressive offered and made available $1,000,000 in UM coverage to Rasier vis-à-vis a "FLORIDA REJECTION OR SELECTION OF UNINSURED MOTORIST COVERAGE AND STACKED OR NON-STACKED LIMITS" form ("Rejection/Selection Form"). (Doc. 12-1, pp. 3-4; 47, pp. 4-5). The Selection/Rejection Form includes a box marked with an "x" next to "I reject all Uninsured Motorist Coverage," and provides:

**FLORIDA REJECTION OR SELECTION OF UNINSURED MOTORIST COVERAGE AND STACKED OR NON-STACKED LIMITS**

**YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.**

**Description of coverage**

Uninsured Motorist Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of bodily injury or death resulting therefrom. Such benefits may include payments for certain medical expenses, lost wages, and pain and suffering, subject to limitations and conditions contained in the policy. For the purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the bodily injury limits are less than your damages.

Florida law requires that automobile liability policies include Uninsured Motorist Coverage limits equal to the Bodily Injury Liability limits in your policy up to $1,000,000 combined single limit unless you select a lower limit offered by the company, or reject Uninsured Motorist Coverage entirely. If you are interested in selecting Uninsured Motorist Coverage for a limit less than your Bodily Injury Liability limits, or are rejecting this coverage entirely, you must complete and sign the appropriate option below.

Please indicate whether you desire to entirely reject Uninsured Motorist Coverage, or whether you desire this coverage at limits equal to or lower than the Bodily Injury Liability limits of your policy:

☒ I reject all Uninsured Motorist Coverage.

☐ I want Uninsured Motorist Coverage in the same limits as my Bodily Injury Liability Coverage or $1,000,000 combined single limit, whichever is less.

☐ I want Uninsured Motorist Coverage at the limit selected below.

  ☐ $10,000 each person/$20,000 each accident

  ☐ $100,000 each accident

  ☐ $1,000,000 combined single limit

The Rejection Form was signed by Amy E. Wagner, Head of North America Insurance, who was the "Authorized Signatory of the Named Insured entity[,]" Rasier. (Docs. 12-1, p. 4; 47, pp. 5-6).

**Signature of First Named Insured or**
**Authorized Signatory of the Named Insured entity**    **Date**    **Title**

X *Amy E. Wagner*    January 1, 2022    Head of North America Insurance

Form 8617 FL (11/12)

(Doc. 12-1, pp. 3-4).

Rasier rejected UM coverage in writing and did not "pay the premium for [UM] coverage." (Docs. 12-1, pp. 3-4, 56). Therefore, the Progressive Policy did not provide UM coverage as reflected in the Policy Declarations, which identifies available coverage. (Doc. 12-1, pp. 5-6).

**Outline of coverage**

| Description | Limits | Deductible |
|---|---|---|
| Liability To Others | | |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | |
| Comprehensive | Actual Cash Value | $2,500* |
| Collision | Actual Cash Value | $2,500* |

*$1,000 deductible will apply only if the insured auto was rented or leased from a vendor recognized and authorized by the named insured for specific TNC use.

| | | |
|---|---|---|
| Uninsured Motorist Non-Stacked | Rejected | |

Form 6489TNC FL (01/18)

| Underinsured Motorist Non-Stacked | Rejected |
| Medical Payments | $5,000 each person |

(Docs. 12-1, pp. 5-6; 47, p. 5).

**B.     Monasterio downloaded the Uber App and agreed to operate as a TNC driver.**

Monasterio downloaded the Uber App to operate as a TNC driver in January or February, 2022.   (Docs. 30-3, pp. 81, 90; 47, p. 5).   She was required to acknowledge and sign agreements including a Platform Access Agreement ("PAA") with Uber and Rasier (Docs. 30-3, p. 82; 30-4; 47, pp. 5-6), which provided in part:

> 3.5     **Uber Maintained Insurance.**  We may, in our sole discretion, choose to maintain auto insurance related to your Rides, but we are not required to provide you with any specific coverage for loss to you or your vehicle, unless we specifically describe it in an addendum to this PAA.  We can change, reduce or cancel insurance that is maintained by us, if any, at any time without notice to you or authorization from you.

(Docs. 30-4, p. 8; 47, pp. 5-6).[5]

Monasterio acknowledged that an addendum to the PAA addressed available insurance coverage to her in Florida.   (Doc 30-3, pp. 83-84).   The addendum provided in pertinent part:

---

[5] Monasterio *argues* in her statement of facts (in passing and in conclusory fashion) that "[t]he PAA does not comply with Florida law . . . ."  I.B., p. 4.  She never discusses this further; thus, any such argument is waived and cannot be raised in the reply brief.  Kellner v. NCL (Bah.), Ltd., 753 F. App'x 662, 666-67 (11th Cir. 2018) (fleeting discussion on damages in Facts section of brief did not preserve the argument, which cannot be raised for first time in reply brief).

7

> Beginning when a User request for transportation has been accepted within the Uber application and ending when the last requesting User departs from your vehicle, a trip is ended, or a trip is cancelled, whichever is later, Company maintains primary automobile liability insurance in the amount of $1,000,000 for death, bodily injury and property damage. In addition, during this period Company maintains Medical Payments coverage in the amount of $5,000 per insured. If a driver holds Comprehensive and Collision coverage on his/her personal auto policy, then Company also maintains coverage for physical damage to the vehicle with a $2,500 deductible.

(Docs. 30-4, p. 30; 47, p. 6).

Monasterio acknowledged that neither the PAA nor the addendum reflect that UM coverage is or would be provided. (Doc. 47, p. 6). Monasterio never raised any concern about the agreements or contacted her insurance agent to inquire into coverage. (Doc. 30-3, pp. 89-90). She never requested a copy of the Progressive Policy for review. (Doc. 30-3, pp. 104-105).

Monasterio claimed to view a "certificate of insurance" on the Uber App, which disclosed available insurance coverage. (Docs. 12-4, p. 5; 30-3, p. 91; 47, p. 6). It did not contain the words "uninsured/underinsured motorist." (Docs. 12-4, p. 5; 47, p. 6). Instead, it provided for $1 million combined single limit or bodily injury and property damage, and that the coverage afforded is subject to the terms, exclusions, limitations, endorsements, and conditions of the policies. (Docs. 12-4, p. 5; 30-3, pp. 103-104).

**C.    The May 6, 2022 auto accident.**

On May 6, 2022, Monasterio, operating as a TNC driver, accepted a request on the Uber App to provide a ride in her vehicle for passenger Bradford Cavanaugh. (Doc. 47, p. 7). She owned and drove that vehicle: a 2022 Honda with VIN No. 1HGCV1F35LA129244. (Doc. 47, p. 7). That Honda was not specifically identified in the Progressive Policy. (Doc. 47, p. 7). Monasterio agreed that the Progressive Policy did not specifically insure her Honda. (Doc. 30-3, p. 161). Instead, Monestario insured that Honda through a personal auto policy with Infiniti. (Doc. 30-3, pp. 29-31).

At some time before 10:45 a.m. that day, Monasterio picked up Cavanaugh at the Hollywood-Fort Lauderdale Airport. (Doc. 47. p. 7). While driving Cavanaugh, a vehicle driven by another individual, Michael Israel, collided with Monasterio's vehicle, and Monasterio claimed resulting significant injuries. (Docs. 12, pp. 8-9; 22, p. 8; 47, p. 7).

**D.    Monasterio's settlement with the tortfeasor and lawsuit filed in State Court seeking UM benefits.**

Monasterio settled with tortfeasor Michael Israel and his insurer GEICO; she received $305,000. (Doc. 30-3, pp. 77-78). On August 17, 2022, Monasterio filed suit in the Broward County Circuit Court, Case No. CACE-22-012164 ("The Lawsuit"). (Docs. 12-4; 47, p. 7). She claimed Israel was underinsured, she was

injured in a prearranged ride, and that Progressive, Uber, and Rasier were obligated to provide $1,000,000 in UM coverage.  (Docs. 12-4, p. 4; 47, p. 7).

She sued Progressive seeking UM benefits; and she sued Progressive, Uber, and Rasier for negligent misrepresentation and declaratory relief related to the TNC Statute.  (Doc. 12-4, pp. 7-10).  She sought damages for serious injuries resulting from the alleged negligence of Israel.  (Doc. 12-4, p. 4).[6]

### E.    Federal declaratory judgment action.

Progressive then brought the instant four-count declaratory judgment action against Monasterio, Uber, and Rasier.  (Doc. 12).  Progressive sought a declaration that there was no UM coverage under the Progressive Policy, and more specifically: (a) Florida's TNC Statute did not preclude an insured from rejecting, or an insurer from not providing, UM/UIM coverage; (b) the Progressive Policy did not provide UM/UIM coverage; (c) the Progressive Policy did not insure a specifically identifiable automobile, generally, or the Honda operated by Monasterio, specifically; (d) Progressive complied with any and all obligations under Florida's UM statute to effectuate Rasier's intent to reject UM/UIM coverage; and, therefore (e) the Progressive Policy did not provide UM/UIM coverage for Monasterio's claims.  (Docs. 12; 30, p. 2).

---

[6] The Lawsuit was removed to the District Court and voluntarily dismissed without prejudice by Monasterio on April 28, 2023, based on an "express agreement" between the parties to resolve the subject coverage dispute.  (Doc. 52, pp. 3-4).

Uber and Rasier answered the complaint and admitted that there was no UM coverage under the Progressive Policy. (Docs. 12 at ¶¶ 29-33; 18 at ¶¶ 29-33; 47, p. 7). They agreed that Rasier rejected UM coverage, that no premium was paid for UM coverage, and that the Progressive Policy did not provide UM coverage. (Id.).

### F. Monasterio's Crossclaim and Counterclaim.

Monasterio answered and filed a crossclaim against Uber and Rasier, and a counterclaim against Progressive seeking a declaration that the three entities violated the TNC Statute, that Monasterio is entitled to receive UM/UIM coverage from the three entities, and that the Progressive Policy provides UM/UIM coverage to Monasterio. (Doc. 22, p. 11). Progressive, Uber, and Rasier filed their respective Answers and requested that the District Court deny relief to Monasterio and enter judgment in their favor. (Docs. 23 & 26).

## III. COURSE OF PROCEEDINGS AND DISPOSITION

### A. Progressive's Motion for Summary Judgment, Monasterio's Response, and Progressive's Reply.

Progressive moved for summary judgment requesting, among other relief, that the District Court (a) enter final judgment in its favor and against Monasterio, Uber, and Rasier with respect to all claims in the Amended Complaint for Declaratory Judgment and (b) enter judgment in its favor and against Monasterio with respect to all claims asserted in the Counterclaim. (Docs. 30, pp. 3-4; 30-1, p. 17).

Uber and Rasier joined Progressive's Motion for Summary Judgment.  (Docs. 31 & 43).  Monasterio filed a Response.  (Doc. 38).  Progressive filed a Reply, which was also joined by Uber and Rasier.  (Docs. 41-44).  The issue argued below—that is relevant to this appeal—is whether under the TNC Statute, the Progressive Policy was not required by the UM Statute to provide UM coverage.  (Docs. 30-1, p. 2; 54, pp. 1-2).  If not required, the second issue was whether the Progressive Policy provided UM coverage.  (<u>Id.</u>).

**B.    Order granting summary judgment, Final Judgment, and appeal.**

The District Court granted Progressive's Motion for Summary Judgment. (Doc. 52).  It interpreted section 627.748(7)(c), which states:

> **(7) Transportation network company and tnc driver insurance requirements.**
>
> **(c)** The following automobile insurance requirements apply while a TNC driver is engaged in a prearranged ride:
>
> > **1.** Automobile insurance that provides:
> >
> > > **a.** A primary automobile liability coverage of at least $1 million for death, bodily injury, and property damage;
> > >
> > > **b.** Personal injury protection benefits that meet the minimum coverage amounts required of a limousine under ss. 627.730-627.7405; and
> > >
> > > **c.** Uninsured and underinsured vehicle coverage as required by s. 627.727.

(Doc. 52, p. 6) (quoting § 627.748(7)(c), Fla. Stat.).

As Rasier and Uber were required to maintain "[a]utomobile insurance that provides [UM] vehicle coverage as required by s. 627.727" (Doc. 52, pp. 6-7), the District Court then examined the UM Statute, which provides at subsection (1):

> **(1)** No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.

(Doc. 52, p. 7) (quoting, in part, § 627.727(1), Fla. Stat.).

The District Court relied on Florida case law providing that subsection (1) "limits the applicability of the uninsured motorist requirements to liability policies covering specifically insured or identified motor vehicles." (Doc. 52, p. 7) (quoting Hooper v. Zurich Ins. Co., 789 So. 2d 368, 369 (Fla. 2d DCA 2001)). It was undisputed that the Progressive Policy did not specifically identify Monastario's Honda—or any specific vehicle. (Doc. 52, p. 7). Accordingly, the District Court found that subsection (1) was not applicable, and the Progressive Policy, therefore, did not need to comply with the requirements set forth in subsection (1) in order to avoid providing UM coverage. (Doc. 52, pp. 8-10).

In interpreting both statutes, the District Court focused on the plain language, which it found unambiguous: "The TNC Act only mandates UM/UIM insurance as required by the Florida UM/UIM Statute and subsection (1) of the UM/UIM only requires that policies that specifically insure vehicles provide such coverage." (Doc. 52, p. 9).

The District Court concluded that "Progressive has established that it is entitled to summary judgment on the question of whether the [Progressive] Policy was statutorily mandated to provide UM/UIM insurance to Ms. Monasterio." (Doc. 52, p. 10). The District Court did not reach an issue raised by Monasterio concerning whether UM coverage was properly rejected under subsection (1) because it found that subsection (1) did not apply to the Progressive Policy in the first place. (Doc. 52, p. 10, n.3).

The District Court next examined subsection (2) of the UM/UIM Statute:

**(2)** The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured. The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. **However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy or $1 million, whichever is less.**

(Doc. 52, p. 10) (quoting § 627.727(2), Fla. Stat.) (emphasis in Order)

The District Court found that Progressive met its obligations under subsection (2) by making available to Rasier UM coverage of $1 million as reflected in the Progressive Policy at Part III – Uninsured Motorist:

> Subject to the Limits of Liability, if you pay the premium for this coverage, we will pay damages, other than punitive or exemplary damages, that an insured is legally entitled to recovery *from the owner or operator of an uninsured* because of bodily injury . . . caused by an accident occurring while the TNC driver is engaged in providing a prearranged service. . .

(Doc. 52, p. 11) (emphasis and alterations in original).

The District Court recognized there was no genuine dispute that Rasier did not pay any premium for UM coverage. (Doc. 52, pp. 11-12). As a result, the Progressive Policy does not provide UM coverage as found by the District Court:

> The text of the Period Policy is clear that UM/UIM insurance coverage is contingent on payment of the premium. There is no dispute that the premium was never paid by Rasier or Uber. This is further confirmed by the fact that the Commercial Auto Insurance Coverage Summary for the Period Policy states that the Uninsured Motorist Coverage was "Rejected." Progressive has established that it is entitled to summary judgment on the question of whether it has met the statutory requirements in Subsection (2) of the Florida UM/UIM Statute. Additionally, Progressive has established that the Period Policy does not provide UM/UIM insurance to any person or entity, including Defendants Uber, Rasier, or Ms. Monasterio.

(Doc. 52, p. 12) (internal citations omitted).

The District Court granted Progressive's Motion for Summary Judgment, and then entered Final Judgment, which provided in pertinent part:

1) Final Judgment is ENTERED in favor of Plaintiff Progressive . . . and against Rasier . . . Uber . . . and . . . Monasterio on all claims brought in Plaintiff's Amended Complaint. (DE 12).

2) Consistent with the Order on Summary Judgment (DE 53 [sic]), Plaintiff's Claim for Declaratory Judgment is adjudged as follows:

> (a) Fla. Stat. § 627.748 does not mandate that Progressive . . . provide uninsured and underinsured motor vehicle insurance coverage in the Transportation Network Company Commercial Auto Policy, Policy Number 06250110-8;

> (b) Progressive . . . complied with its obligation under Fla. Stat. § 627.727(2) to make available, as part of the application for the Transportation Network Company Commercial Auto Policy, Policy Number 06250110-8, uninsured and underinsured motor vehicle insurance coverage.

> (c) Progressive['s] . . Policy does not provide underinsured and underinsured motor vehicle insurance coverage.

(Doc. 54).

The District Court believed that Monasterio's Crossclaim and Counterclaim remained pending (Doc. 55), and Monasterio asked for further briefing to "give finality to this matter." (Doc. 56, p. 2). Monasterio noticed this appeal. (Doc. 60). The District Court then entered an "Order Closing Case." (Doc. 63). Progressive moved to dismiss this appeal for lack of jurisdiction. (App. Docs. 25 & 29). This Court denied that motion, concluded that it has jurisdiction, and ruled that "this appeal MAY PROCEED." (App. Doc. 41-2).

## STANDARD OR SCOPE OF REVIEW

"This Court reviews *de novo* the district court's grant of summary judgment." Anthony v. Georgia, 69 F. 4th 796, 804 (11th Cir. 2023). Questions of statutory interpretation are also reviewed *de novo*. Greater Birmingham Ministries v. Sec'y of State, 105 F. 4th 1324, 1329 (11th Cir. 2024).

## SUMMARY OF THE ARGUMENT

The plain and unambiguous language of the TNC Statute requires a TNC driver or a TNC on behalf of the TNC driver to maintain "[a]utomobile insurance that provides: . . . "[u]ninsured and underinsured vehicle coverage **as required by s. 627.727**." § 627.748(7)(c)1.c., Fla. Stat. (emphasis added).

Section 627.727(1), Florida Statutes, only requires UM coverage for any motor vehicle policy that includes any "specifically insured or identified motor vehicle." § 627.727(1), Fla. Stat. The Progressive Policy does not include any specifically insured or identified motor vehicle—let alone Monasterio's Honda. (Doc. 12-1). Therefore, the TNC Statute did not require that the Progressive Policy provide UM coverage, and the Progressive Policy did not provide UM coverage. The District Court correctly granted Progressive summary judgment for this reason.

Section 627.727(2), Florida Statutes, does not require UM coverage as long as the insurer makes that coverage available. The Progressive policy was not required to provide UM coverage because it did make UM coverage available.

Therefore, the District Court correctly ruled that UM coverage was neither "required by s. 627.727" nor provided in this case.  § 627.748(7)(c)1.c., Fla. Stat.  This Court should affirm.

## ARGUMENT AND CITATIONS TO AUTHORITY

I.  **THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF PROGRESSIVE BECAUSE THE TNC STATUTE DID NOT MANDATE THAT PROGRESSIVE PROVIDE UM COVERAGE UNDER THE PROGRESSIVE POLICY, AND THE PROGRESSIVE POLICY DID NOT PROVIDE UM COVERAGE.**

   A.  **Progressive was not required under the TNC Statute to provide UM coverage because the Progressive Policy did not include any specifically insured or identified motor vehicle under section 627.727(1), Florida Statutes.**

"[T]his Court's lodestar of statutory interpretation . . . [is] if the language at issue has a plain and unambiguous meaning, that meaning controls, and the inquiry ends." Soul Quest Church of Mother Earth, Inc. v. AG, 92 F. 4th 953, 965 (11th Cir. 2023); SE Prop. Holdings, LLC v. Welch, 65 F. 4th 1335, 1342 (11th Cir. 2023) ("When the statute is clear and unambiguous, Florida courts will not look behind its plain language for legislative intent.") (cleaned up).

Because the TNC Statute is unambiguous, Monasterio's request that this Court look to the legislative intent and resort to the cannons of statutory construction is misplaced and should not be entertained.  See Knowles v. Beverly Enterprises-Florida, Inc., 898 So. 2d 1, 5 (Fla. 2004).

The TNC Statute applies because Monasterio was a TNC driver owning and operating a TNC vehicle providing a prearranged ride at the time of the accident. §§ 627.748(1)(b), (g) & (h), Fla. Stat. Rasier and Uber are TNCs. § 627.748(1)(e), Fla. Stat. Thus, we begin with the TNC Statute at issue:

**(7) Transportation network company and tnc driver insurance requirements.**

**(c)** The following automobile insurance requirements apply while a TNC driver is engaged in a prearranged ride:

**1.** Automobile insurance that provides:

**a.** A primary automobile liability coverage of at least $1 million for death, bodily injury, and property damage;

**b.** Personal injury protection benefits that meet the minimum coverage amounts required of a limousine under ss. 627.730-627.7405; and

**c.** Uninsured and underinsured vehicle coverage as required by s. 627.727.

**2.** The coverage requirements of this paragraph may be satisfied by any of the following:

**a.** Automobile insurance maintained by the TNC driver or the TNC vehicle owner;

**b.** Automobile insurance maintained by the TNC; or

**c.** A combination of sub-subparagraphs a. and b.

**(d)** If the TNC driver's insurance under paragraph (b) or paragraph (c) has lapsed or does not provide the required coverage, the insurance maintained by the TNC must provide the coverage

required under this subsection, beginning with the first dollar of a claim, and have the duty to defend such claim.

§ 627.748(7)(c), (d), Fla. Stat.

The insurance maintained by Rasier and Uber through the Progressive Policy provided the required coverage under subsection (7)(c). Specifically, the coverage requirement of $1 million for death, bodily injury, and property damage (under (c)1.a.) was satisfied through the Progressive Policy "maintained by the TNC" (under (c)2.a.). And as explained next, uninsured and underinsured vehicle coverage (under (c)1.c.) was <u>not</u> required by section 627.727, Florida Statutes.

Under the plain and unambiguous terms of section 627.748(7)(c)1.c., Florida Statutes, insurance owed to Monasterio as a TNC driver engaged in a prearranged ride includes UM coverage **"as required by s. 627.727."** § 627.748(7)(c)1.c., Fla. Stat. (emphasis added). As the District Court correctly stated, "[t]here is no other requirement for UM/UIM insurance in the text of the TNC Act." (Doc. 52, p. 7).

"[W]ords or phrases in a statute must be construed in accordance with their common and ordinary meaning." <u>Allen v. USAA Cas. Ins. Co.</u>, 790 F. 3d 1274, 1279 (11th Cir. 2015) (quoting <u>Donato v. AT&T</u>, 767 So. 2d 1146, 1154 (Fla. 2000)). Courts often turn to dictionary definitions to determine their common usage. <u>Soul Quest</u>, 92 F. 4th at 965. "Requirement" is defined as "[s]omething that must be done because of a law or rule; something legally imposed, called for, or demanded[.]" BLACK'S LAW DICTIONARY 1498 (10th ed. 2014).

"Section 627.727, Florida Statutes, governs the extent to which motor vehicle liability insurance policies delivered or issued for delivery in Florida must make uninsured motor vehicle coverage available." O'Brien v. State Farm Fire & Cas. Co., 999 So. 2d 1081, 1083 (Fla. 1st DCA 2009). The question then is whether 627.727 requires (i.e., demands or legally imposes) the Progressive Policy in this case to provide UM coverage. It does not. Whether UM coverage is required under 627.727 depends on the specific policy itself. Subsection (1) provides in pertinent part:

> **(1)** No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any **specifically insured or identified motor vehicle** registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.

§ 627.727(1), Fla. Stat. (emphasis added).

This section "requires uninsured motorist protection to be provided 'with respect to any specifically insured or identified motor vehicle.'" United Servs. Auto. Ass'n v. Roth, 744 So. 2d 1227, 1229-30 (Fla. 4th DCA 1999) (holding summary judgment should have been granted for insurer as no additional premiums were paid for UM protection); O'Brien, 999 So. 2d at 1084 ("Subsection (1) governs only those

policies 'which provide[] bodily injury liability coverage . . . with respect to any specifically insured or identified motor vehicle registered or principally garaged' in Florida.").

Monasterio conceded below and on appeal that the "Policy is not issued for specifically insured or identified vehicles." (Doc. 38, p. 10; I.B., p. 21). As Monasterio's Honda is not "a specifically insured or identified motor vehicle" in the Progressive Policy, Monasterio is not entitled to UM coverage under section 627.727(1), Florida Statutes. See Hooper v. Zurich Ins. Co., 789 So. 2d 368, 370 (Fla. 2d DCA 2001) ("The trial judge, by the partial summary judgment entered for Zurich, determined that section 627.727 was not applicable to afford Mr. Hooper UM coverage because Mr. House's vehicle was not "specifically insured or identified' by Terminix's policy with Zurich. We agree.").

Therefore, the District Court correctly ruled that (a) the TNC Statute did not mandate that the Progressive Policy provide UM coverage, (b) that the Progressive Policy did not provide UM coverage, and (c) that Progressive was entitled to judgment as a matter of law.

**B.** ***Even if*** **subsection (1) applied—which it did not—Rasier rejected UM coverage; therefore, UM coverage was correctly not afforded under the Progressive Policy.**

*Even if* UM coverage was required under subsection (1)—which it was not— Rasier rejected UM coverage under section 627.727(1), Florida Statutes. As that

subsection provides, "the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." § 627.727(1), Fla. Stat.

"Section 627.727(1) requires that UM coverage be provided with any liability policy in equal limits to the liability policy, unless the insured expressly rejects the coverage or elects lower coverage limits by executing an approved form." Travelers Commer. Ins. Co. v. Harrington, 154 So. 3d 1106, 1113 (Fla. 2014). See also Brown-Peterkin v. Williamson, 307 So. 3d 45, 47 (Fla. 4th DCA 2020) (recognizing that subsection (1) allows for the written rejection of UM coverage altogether).

Rasier rejected UM coverage altogether in writing on January 1, 2022. The Selection/Rejection Form was signed by Amy E. Wagner, Head of North America Insurance, who was the "Authorized Signatory of the Named Insured entity[,]" Rasier. (Docs. 12-1, p. 4; 47, pp. 5-6). The Rejection Form includes an "X" next to "I reject all Uninsured Motorist Coverage." The Policy Declarations, which identify available coverage, reflect that Uninsured and Underinsured Motorist Non-Stacked was "Rejected." (Doc. 12-1, pp. 5-6; 47, p. 5). Accordingly, Rasier rejected UM coverage, and the Progressive Policy properly did not provide UM coverage.

Monasterio challenged the rejection below but did not raise that argument in her Initial Brief. Therefore, she is barred from raising any issue to the rejection in her Reply Brief. Sapuppo v. Allstate Floridian Ins. Co., 739 F. 3d 678, 681-83 (11th

Cir. 2014) (discussing abandonment of issues not raised in initial brief, which cannot

be resurrected through reply brief).

**C.    Progressive was not required under the TNC Statute to provide UM coverage because Progressive made UM coverage "available as part of the application for such policy" in compliance with section 627.727(2), Florida Statutes.**

The only applicable section is subsection (2), which provides:

> **(2)** The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured. The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle.  However, an insurer issuing such a policy shall make available as part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy or $1 million, whichever is less.

§ 627.727(2), Fla. Stat.

To satisfy subsection (2), the insurer need only make UM coverage available

to policy holders as part of the application and at the written request of an insured.

Nieves v. N. River Ins. Co., 49 So. 3d 810, 813 (Fla. 4th DCA 2010) (holding that

the excess insurer complied with subsection (2) by making excess UM coverage

available); Tres v. Royal Surplus Lines Ins. Co., 705 So. 2d 643, 645 (Fla. 3d DCA

1998) ("[Subsection 2] only requires an insurer of a non-primary policy to notify an

applicant of the availability of UM coverage."); Weesner v. United Servs. Auto. Ass'n, 711 So. 2d 1192, 1193 (Fla. 5th DCA 1998) (same).

Progressive satisfied subsection (2) by making UM coverage available. See § 627.727(2), Fla. Stat. The Selection/Rejection Form notified Rasier that $1 million in UM coverage was available. Rasier expressly rejected UM coverage. Additionally, the Progressive Policy at Part III – Uninsured Motorist offered UM coverage if Rasier paid the premium for it:

> Subject to the Limits of Liability, **if you pay the premium for this coverage,** we will pay damages, other than punitive or exemplary damages, that an insured is legally entitled to recovery from the owner or operator of an uninsured because of bodily injury . . . caused by an accident occurring while the TNC driver is engaged in providing a prearranged service. . .

(Doc. 12-1, pp. 56, emphasis added).

Rasier did not pay a premium for UM coverage, which makes sense because Rasier expressly rejected UM coverage, and the Progressive Policy reflects that UM/UIM coverage was "Rejected." (Doc. 12-1, pp. 5-6). Furthermore, there is no evidence of a written request for UM coverage prior to issuance of the Progressive Policy. Accordingly, Progressive complied with subsection (2). Therefore, UM coverage was neither required nor provided under the Progressive Policy.

### D. The remaining subsections of the UM Statute are inapplicable.

Monasterio argues that the remaining subsections of the UM Statute ((3)—(9)), somehow dictate a different result from that reached by the District Court.

While she discusses these subsections briefly, she never explains how or why they would mandate that Progressive provide UM coverage in this situation. She is barred from expanding this contention in her Reply Brief. <u>Kellner</u>, 753 F. App'x at 665-66 (explaining that an issue perfunctorily raised without discussion, argument, and citation to authority is abandoned). Regardless, none of those subsections are relevant to this inquiry.

Only subsections (1) and (2) dictate whether and how much UM coverage is necessary under policies of auto insurance. The remaining subsections concern the following: defining "uninsured motor vehicle," insurer insolvency, settlement and subrogation rights, liability for certain noneconomic damages, stacking policies, coverage for family members, and damages recoverable under a statutory bad faith action. <u>See</u> <u>generally</u> §§ 627.727(3)-(9), Fla. Stat. Thus, it is unnecessary to further examine these subsections as they are irrelevant to the issue on appeal.

### E. Monasterio's statutory interpretation contradicts the "plain meaning" of the TNC and UM Statutes and the tenets of statutory construction.

Because the TNC Statute requiring UM coverage "as required by 627.727" is plain and unambiguous, further statutory construction is neither necessary nor appropriate. In any event, Monasterio's interpretation violates the cannons of statutory construction.

Monasterio essentially asks this Court to ignore the words, "as required by s. 627.727" to fit her wishes for application. She asks this Court to rewrite the TNC Statute to mandate that UM coverage be provided in *all* TNC auto policies *even if not* "required by s. 627.727." Her approach violates the supremacy-of-text principle followed in Florida. Coates v. R.J. Reynolds Tobacco Co., 375 So. 3d 168, 171 (Fla. 2023). That is: "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Id. (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)).

Additionally, her reading would render the language "as required by s. 627.727" superfluous. "Statutory interpretations that render statutory provisions superfluous are, and should be, disfavored." Allen, 790 F. 3d at 1281 (quoting Johnson v. Feder, 485 So. 2d 409, 411 (Fla. 1986)). "[A] legislature is presumed to have used no superfluous words." Gordon v. Novastar Mortg., Inc. (In re Hedrick), 524 F. 3d 1175, 1189 (11th Cir. 2008) (quoting Platt v. Union P.R. Co., 99 U.S. 48, 58 (1879)).

If the Legislature did not intend for UM coverage under the TNC Statute to be governed "as required by s. 627.727," it would not have included that modifying phrase. See Allen, 790 F. 3d at 1281 ("Where another, plausible reading of the statute that does not render any language surplusage is available, a court 'does not assume such clumsy draftsmanship.'") (quoting Dewsnup v. Timm, 502 U.S. 410,

425 (1992)). <u>See also</u> <u>Connecticut Nat'l Bank v. Germain</u>, 503 U.S. 249, 254 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

By ignoring the phrase "as required by s. 672.727"—and thereby ignoring the requirements under 672.727—Monasterio would have this Court violate the whole-text cannon. Scalia & Garner, <u>supra</u> at 167 ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."); <u>id</u>. at 174 ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored.").

This Court should not engage in Monasterio's request to look past the plain text to the House of Representative's Final Bill Analysis. <u>See</u> <u>Allen</u>, 790 F. 3d at 1282 ("When, as here, the words of the Legislature are clear, the legislative history of a statute is irrelevant.") (citation omitted); <u>Gordon</u>, 524 F. 3d at 1189 ("[C]ourts must not resort to legislative history to cloud the meaning of statutory text that is plain.").

Regardless, if anything, the House Bill Analysis lends further credence to the argument that the requirement to provide UM coverage—if at all—is governed by what the UM Statute actually "requires." Otherwise, the final version would simply

have mandated UM coverage—full stop. The Florida Legislature is fully aware of the requirements in 627.727; otherwise, it would not have expressly included that modifier in the TNC Statute. See Gordon, 524 F. 3d at 1189; Holmes Cnty. Sch. Bd. v. Duffell, 651 So. 2d 1176, 1179 (Fla. 1995) ("The legislature is presumed to know existing law when it enacts a statute."). In fact, both statutes are under the same Title (XXXVII), Chapter (627) and Part (XI) of the Florida Statutes.

Additionally, the House Bill Analysis is devoid of commentary suggesting that the UM requirements of the TNC Act may contradict or violate those in the UM Statute itself. Such a reading is nonsensical especially given that statutes are to be read harmoniously. Fla. Dep't of State v. Martin, 916 So. 2d 763, 768 (Fla. 2005) ("The doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent.").

To that end, the UM Statute in plain and unambiguous terms provides when UM coverage is required; and if required, when and how it may be rejected, reduced, or eliminated. Monasterio does not argue that the UM Statute is ambiguous or that UM coverage may not be rejected. If UM coverage was mandated in every automobile insurance policy (regardless of the type and terms), the Florida Legislature would not have included avenues to reduce or exclude that coverage.

Thus, Monasterio cannot credibly argue that the Legislature passed a law that expressly incorporates another law yet did not intend for those provisions to apply.

The TNC and UM Statutes coexist and must be read harmoniously together. The obligations to provide UM coverage under the TNC Act are simply those "as required by" the UM Act. Overlapping and complementary legal obligations are commonplace:

> Nor is the need to juggle multiple and sometimes overlapping legal obligations an unusual feature of contemporary American life for the government any more than it is for the governed. Recognizing this fact—and mindful our role is to apply the law, not rewrite it—we approach federal statutes touching on the same topic with a strong presumption they can coexist harmoniously. . . . Where two laws are merely complementary . . . our duty lies not in preferring one over another but in giving effect to both.

Dep't of Agric. Rural Dev. Rual Hous. Serv. v. Kirtz, 601 U.S. 42, 63 (2024) (internal citations and quotations omitted).

In fact, the District Court recognized a persuasive decision of Jean v. James River Ins. Co., 274 So. 3d 46 (La. 4th Ct. App. 2019) writ denied 280 So. 3d 160 (La. 2019). (Doc. 52, p. 9). In Jean, the Fourth Circuit Court of Appeal examined a Louisiana TNC Statute requiring auto insurance to "[i]nclude uninsured and underinsured motorist coverage to the extent required by La. R.S. 22:1295." Jean, 274 So. 3d at 46 (quoting La. Rev. Stat. Ann. § 45:201.6). Section 22.1295 is Louisiana's UM Statute, which is similar to Florida's UM Statute and allows an insured to reject UM coverage in writing. See La. Rev. Stat. Ann. § 22:1295(1)(a)(i).

The <u>Jean</u> Court read the TNC Statute "*in para materei*" with the UM Statute to affirm summary judgment for the insurer, which properly rejected UM coverage. <u>Jean</u>, 274 So. 3d at 46. Though not controlling, the <u>Jean</u> decision supports Progressive's position that Florida's TNC and UM Statutes are harmonious.

Monasterio's main 'support' for her position comes from <u>Am. Home Assur. Co. v. Plaza Materials Corp.</u>, 908 So. 2d 360, 365 (Fla. 2005). That is a wholly inapposite case that does not concern either the UM or TNC Statutes, but rather, "unavoidable internal conflict" between subsections of one statute. <u>Id.</u> No such scenario is present here. The TNC Statute is neither internally contradictory nor in conflict with the UM Statute.

Ignoring the requirements of the UM Statute (while interpreting the TNC Statute), would violate the doctrine of *in pari materia*. There is no heightened burden under the TNC Statute in terms of providing UM coverage despite Monasterio's claim. The TNC Statute's express reference to UM coverage "as required by s. 627.727" reflects the clear intent that the requirements of section 627.727 govern whether, and how much, uninsured/underinsured coverage is required. Under the facts of this case, no such coverage was required.

If the Legislature intended to require UM coverage under *every* TNC Policy, it would presumably have provided specific amounts. For example, subsection (7)(c)1.a. requires "at least $1 million in death, bodily injury, and property damage"

coverage. § 627.748(7)(c)1.a., Fla. Stat. Subsection (7)(c)1.b. requires "[p]ersonal injury protection benefits that meet the minimum coverage amounts required of a limousine under ss. 627.730-627.7405." § 627.748(7)(c)1.b., Fla. Stat.

Yet, subsection (7)(c)1.c. does not provide any particular amount for UM coverage; that is because no such coverage is mandatory in the first place. Even the UM statute provides how much coverage is necessary *when* UM is required. The plain text reflects that the UM coverage "required by 627.727" is what dictates whether UM coverage is required and for what amount. Monasterio's untenable position would require selectively applying the UM Statute to establish the amount of coverage while simultaneously ignoring the remaining provisions of that statute allowing for the rejection of such coverage.

Subsection (7)(d) of the TNC Statute does not assist Monasterio's argument. That subsection mandates only that "the insurance maintained by the TNC must provide the coverage required under this subsection" if the TNC driver's insurance does not. § 627.748(7)(d), Fla. Stat. "This subsection" refers to (7), which itself only requires UM coverage "as required by 627.727." § 627.748(7)(c)1.c., Fla. Stat. As 627.727 does not require UM coverage under this Progressive Policy, there is no violation of subsection (d) because the Progressive Policy *does* "provide the coverage required under this subsection" (i.e., $1 million for death, bodily injury and property damage). § 627.748(7)(d), Fla. Stat.

**F.     Monasterio's thinly veiled attempt to have this Court re-write the TNC Statute should be rejected.**

With the undisputed facts and the plain meaning of the TNC Statute against her, Monasterio resorts to *her opinion* concerning the public policy implications of the TNC Statute which she believes "will cost society millions." I.B., pp. 27-30. She essentially asks this Court to re-write the TNC Statute to provide her UM coverage despite the plain language providing otherwise. Indeed, she argues, "For this additional reason, the district court's judgment must be reversed." I.B., p. 30.

"Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." Badaracco v. Comm'r, 464 U.S. 386, 398 (1984); Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So. 2d 320, 324 (Fla. 2001) ("Under fundamental principles of separation of powers, courts cannot judicially alter the wording of statutes where the Legislature clearly has not done so."); Hawkins v. Ford Motor Co., 748 So. 2d 993, 1000 (Fla. 1999) ("[T]his Court may not rewrite statutes contrary to their plain language."). Accordingly, Monasterio's request that this Court reach a holding based on *Monasterio's* public policy concerns should be rejected.

Her concerns are unfounded in any event. Initially, the TNC Statute "does not preclude an insurer from providing primary or excess coverage for the TNC driver's vehicle by contract or endorsement." § 627.748(8)(b)4., Fla. Stat. Thus, the Legislature permits a TNC driver to negotiate with their insurer for UM coverage

33

applicable while ride-sharing.  See Crowley v. Goauto Ins. Co., 286 So. 3d 466, 473 (La. 4th Ct. App. 2019) (rejecting TNC's driver's argument that Louisiana's TNC Statute was against public policy).

Additionally, Monasterio's position would produce an absurd result and cause chaos.  It would effectively abrogate Florida's UM Statute because it would bar policyholders from rejecting, reducing, or eliminating UM coverage—which is precisely what 627.727 allows.  The UM Statute dictates whether UM coverage is required or not required.  The TNC Statute merely follows the requirements of the UM Statute.

Furthermore, the TNC Statute does ensure protection to drivers on the road by requiring certain coverage amounts.  For instances where the TNC driver is logged on to the digital network but is not engaged in a prearrange ride, the TNC driver is entitled to coverage of at least $50,000 for death and bodily injury per person, $100,000 for death and bodily injury per incident, and $25,000 for property damage; PIP benefits as required under ss. 627.730-627.7405; and UM coverage as required by s. 627.727.  § 627.748(7)(b)(1)a.-c., Fla. Stat.  For instances when the TNC driver is engaged in a prearranged ride, that driver is entitled to coverage of at least $1 million for death, bodily injury, and property damage; PIP benefits as required of a limousine under ss. 627.730-627.7405; and UM coverage as required by s. 627.727. § 627.748(7)(b)(1)a.-c., Fla. Stat.

The Legislature *did* protect drivers actually engaged in a prearranged ride by requiring more coverage in the form of $1 million as opposed to an aggregate of $125,000. The Legislature even imposed a catchall to protect drivers in the event that the drivers' own insurance did not provide coverage required under the law by requiring the TNC to provide the coverage "required under this section." § 627.748(7)(d). Therefore, the Legislature enacted the protection it found necessary under the TNC Statute. Monasterio's request to change the law is before the incorrect branch of government.

Finally, Monasterio's allegation that Progressive, Uber, and Rasier are doing something nefarious is belied by the record. Progressive made UM coverage available. Rasier properly rejected UM coverage by executing the Selection/Rejection Form as permitted under the UM Statute. The Progressive Policy expressly provides that uninsured and underinsured Motorist coverage was "Rejected." (Docs. 12-1, pp. 3-4, 56). And it is undisputed that Rasier did not "pay the premium for this [UM] coverage." (Id.).

Monasterio's reliance on Mercury Ins. Co. v. Anatkov, 929 So. 2d 624 (Fla. 3d DCA 2006) is misplaced. In that case, an auto accident involving Anatkov led him to claim UM benefits from his insurer, Mercury. Id. at 626. Anatkov's signature on a UM/UIM waiver form was forged. Id. Nevertheless, Mercury claimed he waived UM coverage by not paying the premium for UM coverage. Id. The

appellate court held that because Anatkov did not reject UM/UIM in writing, he was entitled to coverage by operation of law. Id. at 627. Anatkov is easily distinguishable because the named insured here—Rasier—admits that it rejected UM/UIM coverage by and through the Selection/Rejection Form. This coverage rejection is "on behalf of all insureds under the policy." §627.727(1), Fla. Stat. Rasier also admits that it did not pay the premium for UM coverage. Accordingly, Rasier and Uber agree there is no UM coverage under the Progressive Policy. Thus, Anatkov does not apply.

Furthermore, Monasterio agreed to operate as a TNC driver by acknowledging and signing various agreements, which expressly informed her that Uber is not required to provide her with any coverage unless specifically described in an addendum to the PAA. She acknowledged that addendum, which provided:

> Beginning when a User request for transportation has been accepted within the Uber application and ending when the last requesting User departs from your vehicle, a trip is ended, or a trip is cancelled, whichever is later, Company maintains primary automobile liability insurance in the amount of $1,000,000 for death, bodily injury and property damage. In addition, during this period Company maintains Medical Payments coverage in the amount of $5,000 per insured. If a driver holds Comprehensive and Collision coverage on his/her personal auto policy, then Company also maintains coverage for physical damage to the vehicle with a $2,500 deductible.

(Docs. 30-4, p. 30; 47, p. 6).

Nowhere in any of the agreements executed by Monasterio is UM coverage discussed. Monasterio never raised any concern about the agreements or contacted

her insurance agent to inquire into coverage. She never requested a copy of the Progressive Policy for review. She even agreed that the Progressive Policy did not insure her Honda; rather, she insured her Honda through a personal auto policy with Infiniti. Thus, Monasterio was entitled to exactly the coverage required under the law and to which she agreed. See generally Allied Van Lines, Inc. v. Bratton, 351 So. 2d 344, 347 (Fla. 1977) ("It has long been held in Florida that one is bound by his contract."); Calderon v. Sixt Rent A Car, LLC, No. 22-13539, ___ F. 4th ___, 2024 U.S. App. LEXIS 20701, *23 (11th Cir. Aug 15, 2024) (quoting Allied Van Lines, Inc., at 347-48).

### G. This Court should affirm the Final Judgment because the plain and unambiguous terms of the Progressive Policy reflect that it did not provide UM coverage.

The District Court correctly interpreted the TNC and UM Statutes in ruling that the TNC Statute did not mandate that Progressive provide UM coverage to Rasier, Uber, or Monasterio through the Progressive Policy. It also correctly ruled that Progressive complied with any and all obligations under the UM Statute.

And finally, the plain and unambiguous language of the Progressive Policy reflects that it did not provide UM coverage to Rasier, Uber, or Monasterio. Initially, Monasterio does not argue on appeal that the plain terms of the Progressive policy provide UM coverage. Thus, she concedes this point and cannot attempt to argue otherwise in her reply brief. See Kellner, 753 F. App'x at 665. Regardless,

Progressive Policy language is plain and unambiguous and must be enforced as written.  See State Farm Mut. Auto. Ins. Co. v. Spangler, 64 F. 4th 1173, 1178-79 (11th Cir. 2023) ("The scope and extent of a policy's coverage is defined by the language and terms of the policy, and where the language of a policy is plain and unambiguous, the policy must be enforced as written."); State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 569-70 (Fla. 2011) (same).

Part III, Uninsured Motorist, only applies "if you pay the premium for this coverage." (Doc. 12-1, pp. 56).  Rasier did not pay the premium for UM coverage.  Rasier expressly rejected UM coverage.  The Policy Declarations, which identify available coverage, plainly reflect that uninsured and underinsured motorist coverage was "Rejected."  The Progressive Policy "must be enforced as written[,]" and courts cannot "create coverage where none exists."  Sherman v. Transamerica Life Ins. Co., 475 F. App'x 733, 736 (11th Cir. 2012) (cleaned up).  Accordingly, there is no genuine dispute that the Progressive Policy did not provide UM coverage.  This Court should affirm.

## II. PROGRESSIVE COMPLIED WITH ITS OBLIGATIONS UNDER FLORIDA LAW, AND MONASTERIO'S CLAIMS AGAINST UBER AND RASIER REMAIN PENDING.

In Section II of the Initial Brief, Monasterio claims that "Uber and Rasier violated the law by refusing to provide legally mandated indemnification."  This argument does not appear to concern Progressive, thus it is inapposite.

In any event, Progressive owes no duty to indemnify because the District Court correctly entered summary judgment in Progressive's favor in ruling that there is no UM coverage under the Progressive Policy.  See <u>Amerisure Mut. Ins. Co. v. Auchter Co.</u>, 673 F. 3d 1294, 1307 (11th Cir. 2012) ("Because there is no coverage, Amerisure has no duty to indemnify or defend Auchter against Amelia's execution of the state court judgment enforcing the arbitrator's award."); <u>Ill. Ins. Exch. v. Scottsdale Ins. Co.</u>, 679 So. 2d 355, 358 (Fla. 3d DCA 1996) ("The duty to indemnify is narrower than the duty to defend, and there must be a determination that coverage exists before a duty to indemnify arises.").

## <u>CONCLUSION</u>

Florida's TNC Statute requires maintaining UM coverage "as required by s. 627.727."  The UM Statute did not require the Progressive Policy to provide UM coverage to Monasterio.  Therefore, the TNC Statute did not mandate UM coverage in this case.  And the Progressive Policy did not provide UM coverage to Monasterio. The District Court correctly granted summary judgment in favor of Progressive, and this Court should affirm.

WHEREFORE, Appellee PROGRESSIVE EXPRESS INSURANCE COMPANY requests that this Court affirm the Final Judgment.

**BOYD & JENERETTE, PA**

*/s/ Kevin D. Franz*
**KEVIN D. FRANZ**
Florida Bar No. 015243
kfranz@boydjen.com
1001 Yamato Road, Suite 102
Boca Raton, FL 33431
Tel: (561) 208-0708
*Counsel for Appellee Progressive Express*
*Insurance Company*

## CERTIFICATE OF COMPLIANCE

We hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure Rule 32(a)(7)(B) in that it contains 9,221 words (including words in footnotes) according to Microsoft 365, the word-processing system used to prepare this brief.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via CMS and via Federal Express upon the following clerk of court this 9th day of September, 2024:

David J. Smith, Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court through the CM/ECF system and furnished upon the following counsel this 9th day of September, 2024.

**Service List**

| | |
|---|---|
| **Javier A. Basnuevo, Esq.**<br>**H. Clay Roberts, Esq.**<br>Roberts & Basnuevo, P.A.<br>113 Almeria Avenue<br>Coral Gables, FL 33134<br>roberts@robertspa.com<br>basnuevo@robertspa.com<br>*Counsel for Karina Monasterio* | **Patrick K. Dahl, Esq.**<br>Morgan & Atkins, PLLC<br>501 E. Las Olas Blvd., Suite 300<br>Fort Lauderdale, FL 33301<br>pdahl@morganakins.com<br>*Counsel for Progressive Express*<br>*Insurance Company* |
| **Veresa Jones Adams, Esq.**<br>ROIG Lawyers<br>1255 S. Military Trail, Suite 100<br>Deerfield Beach, FL 33442<br>liabilitypleadings@roiglawyers.com<br>vadams@roidlawyers.com<br>*Counsel for Rasier-DC, LLC &*<br>*Uber Technologies, Inc.* | **Blaine H. Evanson, Esq.**<br>Gibson, Dunn & Crutcher, LLP<br>3161 Michelson Drive, Suite 1200<br>Irvine, CA 92612<br>bEvanson@gibsondunn.com<br>*Counsel for Rasier-DC, LLC & Uber*<br>*Technologies, Inc.* |
| **Martha D. Fornaris, Esq.**<br>Fornaris Law Firm, P.A.<br>65 Almeria Avenue<br>Coral Gables, FL 33134<br>mfornaris@fornaris.com<br>*Co-Counsel for Monasterio* | |

*/s/ Kevin D. Franz*
KEVIN D. FRANZ